**"O"**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| EMIL G. HERNANDEZ, | Case No. EDCV 05-1032-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

**I.   Procedural and Factual History**

Plaintiff Emil G. Hernandez ("Plaintiff") seeks judicial review of the Commissioner's final decision denying his application for Social Security Disability Insurance benefits. In accordance with the Court's Case Management Order, the parties have filed a joint stipulation ("JS") of disputed issues. The matter is ready for decision.

Plaintiff applied for Social Security Disability Insurance benefits on July 27, 2001. (Joint Stipulation ("JS") at 40). He alleges disability beginning January 12, 1995, due to post traumatic stress

disorder stemming from his combat experience in Vietnam, and related symptoms. (JS at 2). Plaintiff was fully and currently insured for disability insurance benefits on his alleged onset date of January 12, 1995, and remained so insured though December 31, 1996. (AR at 14). In order to qualify for disability insurance benefits, Plaintiff is required to establish that he was disabled on or before the date of termination of his insured status. 20 C.F.R. §404.131(b)(1); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984); *Flaten v. Secretary of Health & Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). Plaintiff was therefore required to establish that he was disabled on or before December 31, 1996 in order to be eligible for disability insurance benefits.

Plaintiff's application was initially denied on August 23, 2001, and then again on reconsideration. A hearing was held before administrative law judge (ALJ) David I. Wurzel on March 18, 2004. After Plaintiff became upset while testifying, which prevented the hearing from proceeding, a second session was held on April 22, 2004.

Plaintiff was born in Long Beach, California, on June 4, 1946 and was 57 years old at the time of the administrative hearing. He has two years of college education and worked for many years in the home construction industry. (AR at 14, 22). He can fluently speak, read and write English. Plaintiff served in the Vietnam War as a parachutist. (AR at 73). He is on the Agent Orange Registry based on his exposure to the chemical in Vietnam. (AR at 134). Plaintiff's medical records at the Riverside Vet Center reveal a history of severe nightmares and flashbacks stemming from his war experiences. (*See e.g.* Vet Center Mental Status Evaluation AR at 241). Plaintiff has always had a difficult time talking to anyone about his experiences. He cannot hear

a fly or tolerate one being on his skin because of the flies he saw on dead bodies. (AR at 241). He has flashbacks and nightmares about seeing a fellow soldier "blow the brains out" of a group of kids in new school uniforms and new sneakers. (AR at 241). His responsibilities in the war included loading bodies into bags. He saw people burned with Napalm. (AR at 242). In the many years since the war, Plaintiff has held good jobs, but always loses them because of anger management problems. (AR at 240). He struggles with road rage. (AR at 240). He also has a history of alcohol and substance abuse problems. (AR at 16). The ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since his alleged onset date of January 12, 1995. He briefly worked for two months in 1998 as a fence erector, for two different employers, but was fired by both because he was not getting along with his co-workers. The ALJ found that neither of these jobs met the definition of SGA. (AR at 14).

After a Department of Veteran's Affairs ("VA") contracted examination on January 25, 2001, the Department concluded that Plaintiff "obsessed about his Vietnam experiences" and that "there was evidence of delusions, paranoia, and suspiciousness." The VA evaluation found that Plaintiff had an "impairment in thought process and communication, nightmares, hallucinations, flashbacks, isolation and sleep disturbance." (AR at 128). On April 30, 2001, the VA found that Plaintiff suffers from Post Traumatic Stress Disorder ("PTSD")and should receive veteran's benefits. (AR at 126). The Department classified Plaintiff as having a "permanent and total service connected disability" commencing June 4, 1998 which rendered him "unemployable." (AR at 129). As a result of this finding, Plaintiff receives $2,107 a month from the VA.

However, the issue in this case is whether Plaintiff was disabled on or before December 31, 1996, the date his insured status for disability benefits expired. The detailed medical records from the Riverside Vet Center, diagnosing and treating Plaintiff's PTSD, begin in 1998. Starting in 1998, Plaintiff has received regular mental health care, therapy and treatment with medication. Plaintiff's medical records prior to 1998 are far more sparse.

Plaintiff did see a physician, Dr. Dorian Paskowitz, M.D., on two occasions for mental health treatment before the date his insured status expired. Reports of each visit are contained in separate letters dated October 16, 2001, almost five years after the last of the two examinations. (AR 149-50). Dr. Paskowitz reported that on January 10, 1995, he diagnosed Plaintiff with severe anxiety with panic episodes "of such a nature and degree as to make it impossible to work and get along with others." (AR at 150). Paskowitz found that this "traumatic stress disorder" stemmed from Plaintiff's combat experience in Vietnam.

In the second letter, Dr. Paskowitz reported that on December 3, 1996, Plaintiff returned with essentially the same signs and symptoms as exhibited in the first visit: "a complete inability to concentrate and focus, severe anxiety and panic spells, hallucinations, delusions of a paranoid nature and irritability to the extent of possibly being homicidal." (AR at 149). Paskowitz concluded that "existing emotional problems require advanced and prolonged psychiatric treatment if [Plaintiff] is ever going to achieve substantial employability and make an adequate adjustment to society." (AR at 149). In the two years between the two visits to Paskowitz, Plaintiff suffered a perforation of the appendix, surgery, and a prolonged recovery. This, according to Paskowitz, was the apparent reason for the long gap in seeking mental

health treatment from Paskowitz. (AR at 149). Paskowitz scheduled further visits, but Plaintiff missed all subsequent appointments.

The ALJ decided not to credit the findings of Paskowitz for several reasons. First, the ALJ found that with only two visits, almost two years apart, that Paskowitz was not a "treating" physician, but rather only an "examining" physician. As such, he was to be accorded less deference than a treating physician. In addition, Paskowitz did not provide any of his notes from the actual visits with Plaintiff, nor did he conduct a mental status examination in making his diagnoses. Rather, the two letters he wrote were prepared almost five years after Plaintiff's last visit. Next, it was noted that Paskowitz did not discuss Plaintiff's alcohol and substance abuse history in making his evaluation. Finally, the ALJ observed that Paskowitz stated that Plaintiff had been in the Vietnam war for three years, when he really only served there for one year.[1] (AR at 15, 20-21). Because of the lack of supporting documentation and these factual errors or omissions, the ALJ chose not to credit Paskowitz's findings, but rather to credit those of the non-examining state agency medical consultants. (AR at 21).

Two non-examining state agency medical consultants evaluated Plaintiff's medical file and found that there was insufficient evidence to provide a reliable basis for assessing the Plaintiff's mental functional limitations prior to the expiration of his Title-II insured status on December 31, 1996. (AR at 131, 250). Both state agency medical consultants noted that there were no clinical or laboratory findings to

---

[1] The accuracy of the ALJ's observation considering service in Viet Nam is questionable. It appears that Paskowitz reported that Plaintiff had been in the U.S. Army for three years with service in Viet Nam, not that he had served in Viet Nam for three years. This is not a valid basis for rejecting Paskowitz's findings.

support the opinions of Dr. Paskowitz. (AR at 21).

Thus, after discounting the diagnoses made by Dr. Paskowitz and relying on the state agency medical consultants, the ALJ concluded that there was no medical support for a finding of a disabling PTSD condition prior to the expiration of Plaintiff's insured status. The ALJ then considered the allegations made by Plaintiff himself in his applications and testimony, and the supporting evidence that his daughter provided in a "Daily Activities Questionnaire" on August 14, 2001. The ALJ did not fully credit Plaintiff's testimony because the ALJ found that Plaintiff was not candid regarding his history of alcoholism. (AR at 23). The ALJ noted that one of Plaintiff counselors, in 2000, concluded that Plaintiff was "concealing a drinking problem." The ALJ reviewed the inconsistent statements Plaintiff had made in various settings (although Plaintiff was candid during the hearing) about his alcohol use, and agreed. (AR at 23). The AlJ also cited a recent misdemeanor conviction for "being under the influence" that Plaintiff admitted occurred "a few years ago." Both the alcoholism and misdemeanor conviction, the ALJ decided, did not reflect well on Plaintiff's veracity. (AR at 24).

Finally, the ALJ evaluated Plaintiff's daughter's statements, and concluded that they actually implied that Plaintiff had enjoyed higher levels of daily activities and social functioning prior to August 2001. The ALJ concluded that her statements about Plaintiff's debilitating PTSD symptoms did not bear directly on the time period at issue in this case – since all individuals involved acknowledge that by 2001 Plaintiff's functioning was very low, but what is at issue is his health status in and before 1996. (AR at 23).

At the hearing, the ALJ elicited the testimony of a vocational expert ("VE") in determining whether there were jobs in the economy that

Plaintiff could perform. Responding to a hypothetical question that reflected Plaintiff's residual functional capacity ("RFC"),[2] the VE testified that during the relevant time period, Plaintiff was unable to return to any of his past work, but that there were jobs that existed in the national economy that he could perform, such as a gluer or garment folder. (AR at 26).

Plaintiff contends that the ALJ: (1) erroneously rejected the opinion of Dr, Paskowitz, who Plaintiff claims was his treating physician; (2) improperly rejected Plaintiff's subjective complaints and credibility; and (3) improperly considered the vocational evidence. (JS at 3). He requests a remand for an award of benefits. The Commissioner disagrees and contends that the Commissioner's final decision is supported by substantial evidence.

II. **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001).

---

[2] The ALJ accessed the Plaintiff's RFC as follows: Plaintiff retained the ability to perform work activity at the light exertional level with the following non-exertional limitations: never climbing ladders, ropes or scaffolds except in an emergency; occasionally climbing ramps and stairs; occasionally balancing, stooping, crouching, kneeling and crawling; no working overhead with either upper extremity; avoiding concentrated exposure to dangerous moving machinery, electric shock, radiation and unprotected heights; and mentally limited to unskilled work with no close or frequent interpersonal contact with supervisors, co-workers, and the public. (AR at 28).

Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

### III. Discussion and Analysis

After reviewing the parties' respective contentions and the record as a whole, the Court finds that the ALJ's conclusion that Plaintiff was not under a disability at any time from his alleged onset date of January 12, 1995, through the expiration of his insured status on December 31, 1996, is supported by substantial evidence.

The Court finds, with respect to the first issue, that the ALJ did not err in his rejection of the opinion of Dr. Paskowitz. Even assuming, *arguendo*, that Dr.Paskowitz was a treating doctor, the ALJ's evaluation of Plaintiff's mental impairment is still supported by substantial evidence.

An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)(ALJ may credit opinion of nontreating source based on independent clinical findings over treating physician's opinion)(citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). If the

8

treating physician's opinion is contradicted, and the opinion of a non-treating source is based upon independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence on which the ALJ may rely. *Andrews*, 53 F.3d at 1041. Where, as here, a non-treating source's opinion contradicts that of the treating physician, but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence. *Id.*; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

In this case, the ALJ also provided specific, legitimate reasons to support his rejection of Dr. Paskowitz's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). For example, the ALJ noted that the substantial limitations assessed by this doctor after only seeing the Plaintiff once were inconsistent with the minimal findings in the record. (AR at 20); *see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (explaining that the ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). Further, the ALJ found that Dr. Paskowitz's opinion appeared to be based on Plaintiff's subjective complaints, without clinical evidence or a supporting mental status exam, which the ALJ properly discounted. (AR at 28). *Morgan*, 169 F.3d at 602 (explaining that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted"); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Next, the failure of Dr. Paskowitz to provide any contemporaneous findings and reports is

9

suspect.  His statements come from letters written five and six years after the fact.  Finally, the omissions in Paskowitz' opinion regarding Plaintiff's alcoholism and substance abuse further serve to undermine his conclusions.  Thus, the ALJ provided clear and convincing reasons for rejecting Dr. Paskowitz's opinion.

The Court further finds that the ALJ relied on substantial evidence, based on the record, in rejecting Plaintiff's subjective complaints and credibility concerning his condition prior to December 31, 1996.  Once a claimant produces objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of pain or other symptoms, the ALJ may reject subjective symptom testimony only by offering specific, clear and convincing reasons for doing so, in the absence of any evidence of malingering.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If the ALJ finds that a claimant's testimony regarding his subjective symptoms is unreliable, the ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan*, 169 F.3d at 599; *Lester*, 81 F.3d at 834.  Resolving conflicts in the testimony and determining questions of credibility are functions solely of the Commissioner.  *Morgan*, 169 F.3d at 599.

As noted above, the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony, with citations to the evidence.  He discussed Plaintiff's lack of honesty concerning his substance abuse problems in other settings and his misdemeanor conviction.  The ALJ observed Plaintiff and determined that his "demeanor as a witness at the hearing was poor." (AR at 23-24). *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002)(holding that claimant's demeanor at the hearing was a proper basis for rejecting claimant's

subjective complaints); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)(upholding ALJ's finding that a claimant generally lacks credibility as a permissible basis for rejecting claimant's testimony). As determining questions of credibility are functions solely of the Commissioner, the Court sees no reason to reject the specific and clear reasons provided by the ALJ in this case.

Finally, the Court finds that the ALJ properly considered the vocational evidence in the record. The ALJ posed a complete hypothetical, based upon the limitations which were supported by substantial evidence, to the VE, and received reliable testimony in response regarding Plaintiff's ability to work and jobs available to him during the relevant time period.

Under the governing legal standard, "[i]n order for the testimony of a [VE] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotation marks omitted) (citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)); *see also Light*, 119 F.3d at 793 ("[T]he ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the vocational expert must consider all of the claimant's limitations.").

Here, the ALJ's hypothetical adequately incorporated all of Plaintiff's limitations. Plaintiff argues that an additional limitation of 2 to 4 hours per week of extra unscheduled work breaks should have been a part of the hypothetical. However, Plaintiff can point to no medical evidence supporting such a restriction.

\\
\\

**IV. Conclusion**

Based upon the applicable legal standards, the Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.  It is not this Court's function to substitute its judgment for that of the ALJ.  It cannot be said that the decision is not supported by substantial evidence.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 8, 2006                    */S/ Marc L. Goldman*
                                         _____
                                         MARC L. GOLDMAN
                                         United States Magistrate Judge